```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------- X
                                                              :
ISLAND TWO LLC and SCOTT SOZIO,                               :
                                     Plaintiffs,              :
                                                              :
                   -against-                                  :
                                                              :   13 Civ. 02121 (LGS)
ISLAND ONE, INC. and DOUGLAS                                  :
TEITELBAUM,                                                   :   OPINION AND ORDER
                                     Defendants.              :
                                                              :
------------------------------------------------------------- X
                                                              :
ISLAND ONE, INC.,                                             :
                                     Counterclaimant,         :
                                                              :
                   -against-                                  :
                                                              :
ISLAND TWO LLC and SCOTT SOZIO,                               :
                                     Counterclaim Defendants. :
------------------------------------------------------------- X
```

LORNA G. SCHOFIELD, District Judge:

This action arises out of a dispute between two business associates, Doug Teitelbaum and Scott Sozio, and a failed attempt to sell Island One Inc. ("Island One"), a Florida corporation in which they both had an interest. Island One develops and manages properties in Florida. Before the Court are the parties' motions for summary judgment and partial summary judgment on all but one of Plaintiffs' claims and all of Defendants' counterclaims. For the reasons that follow, the motions are granted in part and denied in part.

I.  **BACKGROUND**

The facts below are taken from the parties' Rule 56.1 statements and submissions to the Court. The facts are either undisputed or read in the light most favorable to the non-moving parties. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

### A. Initial Purchase and Management of Island One

In May 2011, Island One was purchased by Timeshare Acquisitions LLC ("TA"), a company that was formed by Teitelbaum, and in which Sozio's family has part ownership. TA is managed by TAC Sponsor LLC ("TAC"). TAC is owned 75% by Teitelbaum and 25% by Sozio. From the time TA purchased Island One, Teitelbaum and Sozio agreed that the plan would be to improve Island One's financial performance, and then resell it to a third party.

In May 2011, Island One entered into a Management Agreement with Homewood Capital, LLC ("Homewood") and Sozio's company, Island Two, LLC ("Island Two"). Homewood was owned by Teitelbaum and employed Sozio. Island Two is a limited liability company with Sozio as its sole owner and employee. Under the Management Agreement, Homewood was to serve as Island One's manager, and Island Two was to serve as its advisor. In exchange for these services, Island One agreed to pay an annual fee of $500,000, with 75% or $375,000 going to Homewood, and 25% or $125,000 going to Island Two. The Management Agreement provided for an initial five-year term, through August 2016, but permitted earlier termination in certain circumstances, discussed in further detail below. The Management Agreement also provided for exculpation and indemnification of Homewood and Island Two in certain circumstances, also addressed below.

### B. The Attempted Sale and Sozio's Role

In March 2012, Island One's CEO, Sterling Stoudenmire, advised Island One's Board of Directors, which included Teitelbaum and Sozio, that he wanted to buy Island One from TA through his company, Sterling Leisure Holdings ("SLH"). The parties initially planned to sell Island One and an Island One subsidiary, Crescent One LLC ("Crescent"), to SLH for $22 million (the "Attempted Sale"). According to Island One, the terms of the Attempted Sale were discussed, but were never set in stone.

To finance the Attempted Sale, Stoudenmire initially brought in two primary equity investors, and also invited Teitelbaum to invest in SLH, who declined. In addition, Stoudenmire offered Sozio's family the opportunity to roll over its existing interest in TA into SLH, and Sozio expressly sought and received permission from Teitelbaum to take that opportunity. The parties offer conflicting evidence about whether Stoudenmire's invitation, and Teitelbaum's consent, included Sozio's personal investment in SLH.

Throughout the Attempted Sale, Sozio was involved on both the seller's side (in his role as a Director on the Island One Board and advisor to Island One under the Management Agreement) and on the buyers' side (as a result of Stoudenmire's investment invitation to Sozio's family and, as Sozio claims, to him personally). Because of his dual roles, Sozio became a conduit for information between the seller's side and the buyers' side, although the parties dispute the extent of the information Sozio shared and Sozio's motivations in sharing and, in certain cases, failing to share information. There is no dispute that both parties were aware of Sozio's conflict of interest, but the parties disagree regarding the nature and extent of that conflict.

Plaintiffs contend that Teitelbaum was fully aware of Sozio's conflict of interest and consented verbally and in writing to Sozio's participation on both the seller's side and the buyers' side. Sozio presents evidence that Teitelbaum was approached by Stoudenmire and others to remove Sozio from his role on the seller's side in order to alleviate the conflict of interest, but declined to take action. According to evidence presented by Plaintiffs, Teitelbaum placed no restrictions on Sozio's ability to invest in SLH. Plaintiffs likewise present evidence, in the form of a declaration from Sozio, that Sozio was never asked by Island One to disclose information about the buyer or the financing of the transaction.

Island One asserts that Stoudenmire asked Sozio and his family to participate on the buyers' side as a passive, minority investor and that Sozio was granted permission by Teitelbaum and another Island One Director to participate on the buyers' side only in that limited capacity, and with the expectation that he would continue to play a substantial role on the seller's side in his capacity as a Director and an advisor to Island One. Island One maintains that Sozio took advantage of his dual roles, and attempted to force through the Attempted Sale, concealing problems on the buyers' side and intentionally withholding material information on the seller's side from the Island One Board of Directors. Island One adduces evidence of six such instances, all disputed by Plaintiffs.

First, Island One presents evidence that Sozio did not disclose to the Island One Board that he and Stoudenmire never reached a definitive agreement regarding Sozio's role as a minority investor in SLH, or that the two individuals were engaged in a dispute over the ownership of SLH. Island One also adduces evidence that, had the Island One Board known of the failure to reach agreement over the ownership of SLH, Island One would not have spent further time or resources on the Attempted Sale. Plaintiffs admit that Sozio and Stoudenmire did not reach a final agreement on the ownership structure of SLH, but deny that Sozio failed to disclose that fact to the Island One Board -- noting that Stoudenmire was on the Island One Board and accordingly was aware of the lack of an agreement. Plaintiffs present evidence that SLH had the ability to complete the purchase of Island One with or without the Sozio family's equity contribution.

Second, Island One presents evidence that Sozio did not disclose to the Island One Board, or anyone else on the seller's side, that two prospective equity investors backed out of the Attempted Sale. According to Island One's evidence, the seller's side would not have moved forward with the Attempted Sale had it known of the loss of these prospective equity investors.

Plaintiffs admit that Sozio knew that both prospective investors had dropped out, and did not disclose that information to anyone on the seller's side.  Plaintiffs also submit evidence in the form of an email chain that Teitelbaum was told that equity investors were not "lined up yet," and responded by stating "[y]up.  Not much we can do," evidencing both awareness and a lack of concern over the loss of the two prospective investors.

Third, Island One presents evidence that Sozio did not disclose to the Island One Board that, at Stoudenmire's suggestion, Island One was charged for buyers' side expenses consisting of fees charged by potential lenders to the buyers' group.  Sozio denies being aware that the buyers' group charged the lenders' fees to Island One.

Fourth, Island One adduces evidence that Sozio failed to disclose a valuation of Crescent that was prepared by a third party for Island One at Sozio's request, for the purpose of selling Crescent after the acquisition of Island One by the buyers' group.  Plaintiffs admit that Sozio received a valuation of the Crescent property, but adduce evidence that the valuation was prepared for Sozio, not for Island One, and that Sozio viewed the valuation as deficient (and therefore did not show the report to anyone), because it treated the property as a hotel or condominium, and not a timeshare resort.  According to evidence adduced by Plaintiffs, Sozio told Stoudenmire about the report, although he did not give him a copy of the report.  Plaintiffs admit that the purpose of the valuation report was to prepare for a potential sale of Crescent after the sale of Island One.

Fifth, Island One presents evidence that Sozio failed to disclose business opportunities to Island One, which he instead presented to Van Dyke Holdings and Mr. Van Dyke (collectively, "Van Dyke"), who later became his employer.  Island One lists several examples of such opportunities, including an opportunity in 2012 to buy certain timeshare mortgage receivables from a company called Textron.  Plaintiffs admit that Sozio presented certain opportunities to

Van Dyke, but adduce evidence that Sozio intended for Van Dyke to pursue those opportunities together with Island One. The parties dispute whether Van Dyke actually pursued any of these opportunities.

Sixth, Island One adduces evidence that after the other primary equity participants had dropped out, Sozio tried to bring in Van Dyke as a potential new equity partner in the Attempted Sale, and disclosed confidential information about Island One to Van Dyke, all without telling the Island One Board. Island One presents evidence that Sozio submitted a proposal involving Van Dyke as the primary equity investor, and that the proposal involved a drastic reduction in Stoudenmire's participation and a corresponding increase in Sozio's participation. In his declaration, Sozio admits that he did not tell Teitelbaum about Van Dyke's potential involvement, or about Sozio's proposal involving Van Dyke, but asserts that Stoudenmire was aware of Van Dyke's involvement and that Sozio did not publicize Van Dyke's involvement more broadly because Mr. Van Dyke had requested that Van Dyke's possible participation remain confidential.

      **C.**     **Failure of the Attempted Sale and Later Events**

The parties dispute the reasons that the Attempted Sale ultimately failed. According to Island One, Stoudenmire rejected the proposal involving Van Dyke and chose to finance the Attempted Sale with new equity investors, which did not include Sozio. One of the sources of debt funding, however, rejected the terms of the Attempted Sale. According to evidence presented by Plaintiffs, however, the primary reason for the failure of the Attempted Sale was the decision of Teitelbaum and others to pursue a more lucrative deal.

On January 2, 2013, Teitelbaum fired Sozio from Homewood and announced to the Island One Board (but not Sozio) that Sozio was being removed from the Board. On February 1, 2013, Island One, without notice, ceased paying Island Two its advisor fees under the

Management Agreement. On July 1, 2013, Island One was sold to a company called Diamond Resorts.

## II. LEGAL STANDARD

Summary judgment is appropriate where the record before the court establishes that there is no "genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the initial burden of informing the court of the basis for the summary judgment motion and identifying those portions of the record that demonstrate the absence of a genuine dispute as to any material fact. Fed. R. Civ. P. 56(c); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The court must construe the evidence in the light most favorable to the non-moving party and must draw all reasonable inferences in the non-moving party's favor. *See In re "Agent Orange" Prod. Liab. Litig.*, 517 F.3d 76, 87 (2d Cir. 2008); *Anderson*, 477 U.S. at 255.

If the non-moving party has the burden of proof on a specific issue, the moving party may satisfy its own initial burden by demonstrating the absence of evidence in support of an essential element of the non-moving party's claim. *See Celotex*, 477 U.S. at 322-23; *PepsiCo, Inc. v. Coca-Cola Co.*, 315 F.3d 101, 105 (2d Cir. 2002). In other words, summary judgment is warranted if a party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322.

If the moving party carries its initial burden, then the non-moving party bears the burden of demonstrating a genuine issue of material fact. *See id.* at 322. In satisfying this burden, the non-moving party cannot rely merely on allegations or denials of the factual assertions of the moving party. *See* Fed. R. Civ. P. 56(c)(1)(A); *Celotex*, 477 U.S. at 324. Moreover, "conclusory statements, conjecture, or speculation by the party resisting the motion will not defeat summary

judgment." *Kulak v. City of New York*, 88 F.3d 63, 71 (2d Cir. 1996). The non-moving party must present specific evidence in support of its contention that there is a genuine dispute as to the material facts. *See Celotex*, 477 U.S. at 324. Furthermore, to demonstrate a genuine dispute as to the material facts, the non-moving party must come forward with sufficient evidence to permit a reasonable jury to return a verdict in its favor. *See Anderson*, 477 U.S. at 248.

**III.     DISCUSSION**

Plaintiffs, Sozio and Island Two, assert claims against Island One for contractual indemnification. Plaintiff Island Two also asserts claims against Island One for breach of contract and against Teitelbaum for tortious interference with contract. Plaintiff Sozio also asserts a claim against Island One for indemnification and advancement of expenses under the Island One Articles of Incorporation. Defendant Island One brings counterclaims against Sozio for breach of fiduciary duty and against Island Two for breach of contract. The parties move or cross-move for summary judgment on all claims and counterclaims except the tortious interference claim against Teitelbaum.

Summary judgment is denied on all claims except for Plaintiffs' claim for indemnification under the Management Agreement. Because the parties' briefing focused substantially on Island One's counterclaim against Sozio for breach of fiduciary duty and the facts surrounding that claim, the analysis begins there.

    **A.     Counterclaim for Breach of Fiduciary Duty**

The parties cross-move for summary judgment on the issue of whether Sozio, as a Director of Island One, breached his fiduciary duty to Island One through his conduct during the course of the Attempted Sale. Because there are disputed issues of material fact, summary judgment is denied as to Island One's claim.

The parties agree that Florida law governs the scope of Sozio's fiduciary duties as a Director of Island One.  Under Florida law, a claim for breach of fiduciary duty has three elements:  (1) existence of a fiduciary duty; (2) breach of the fiduciary duty; and (3) proximate cause of damages.  *Gault v. SRI Surgical Exp., Inc.*, No. 8:12 Civ. 1389, 2012 WL 5199581, at *2 (M.D. Fla. Oct. 22, 2012) (citing *Gracey v. Eaker*, 837 So. 2d 348, 353 (Fla. 2002)).  Florida law shields directors from personal liability for monetary damages for any "statement, vote, decision, or failure to act, regarding corporate management or policy," Fla. Stat. § 607.0831(1), except in certain specified circumstances, including, in a proceeding by or in the right of the corporation, conduct involving "conscious disregard for the best interest of the corporation, or willful misconduct."  *Id.* § 607.0831(1)(b)(4).

The parties agree that Sozio had a fiduciary duty to Island One, but dispute whether he breached the duty and, if so, whether his breach caused damages to Island One.  Island One argues that Sozio breached his fiduciary duty by (1) failing to disclose information about the Attempted Sale and (2) attempting to usurp Island One's business opportunities.  Under Florida law, a fiduciary duty includes the duty to disclose material facts.  *Bluesky Greenland Envtl. Solutions, LLC v. 21st Century Planet Fund, LLC*, 985 F. Supp. 2d 1356, 1365 (S.D. Fla. 2013); *Tinwood N.V. v. Sun Banks, Inc.*, 570 So. 2d 955, 959 (Fla. Dist. Ct. App. 1990) (stating that a director involved in a transaction on the company's behalf owes a duty "to make full disclosure of all facts within his knowledge pertaining to the transaction"), *declined to follow on other grounds by State v. Lucas*, 600 So. 2d 1093 (Fla. 1992).  Florida law also imposes on corporate directors the duty to abide by the "doctrine of corporate opportunity," prohibiting a corporation's fiduciary from acquiring "in opposition to the corporation, property in which the corporation has an interest or tangible expectancy or which is essential to its existence."  *Farber v. Servan Land*

9

*Co., Inc.*, 662 F.2d 371, 377 (5th Cir. Unit B Nov. 1981) (citation and internal quotation marks omitted) (construing Florida law).

Genuine issues of material fact exist on the question of whether Sozio breached his fiduciary duty by failing to disclose material information. For example, the parties present conflicting evidence regarding whether the information withheld by Sozio was material -- including whether the dispute between Sozio and Stoudenmire over the ownership structure of SLH and the loss of two major equity investors would have impacted Island One's willingness to move forward with the Attempted Sale. Island One presents testimony from a former Homewood employee that Island One agreed to negotiate with the buyers' group on the understanding that the equity investors were "fully committed," and that, but for this understanding, it would not have done so. On the other hand, Plaintiffs submit Sozio's affidavit testimony that: (1) he was never asked to report the names of the equity investors; (2) Sozio and his family's participation in SLH was immaterial; and (3) Teitelbaum was aware that equity investors were not lined up, and was unperturbed by the fact. A reasonable jury could find in either party's favor on the issue of whether these omissions were material.

Similarly, the question of whether Sozio violated his fiduciary duty by attempting to misappropriate business opportunities for himself also raises genuine issues of material fact. Island One presents a declaration from one of its Directors that Island One was unaware of the opportunities in question, and that the Island One Board would have been interested in pursuing, or at least being made aware of, the opportunities. Conversely, Plaintiffs' evidence shows that Sozio presented opportunities to Van Dyke for sharing with Island One, and that Island One was aware of certain of the opportunities and declined to pursue them. Accordingly, a question of material fact exists that is for the jury, not for this Court, to resolve.

B.      **Indemnification under the Management Agreement**

The parties cross-move for summary judgment on Plaintiffs' claim for indemnification under the Management Agreement for costs associated with defending against Island One's counterclaims. Because the Management Agreement's indemnification clause cannot be construed to apply to interparty disputes, i.e., those between the contracting parties, summary judgment is granted in favor of Island One.

The indemnification provision, Section 8(b) of the Management Agreement, provides that

> The Company [Island One] shall indemnify, defend and hold harmless the Manager, the Advisor and their respective principals, members, officers, directors, employees and agents . . . from and against any loss, damage, liability, cost or expense, as they are incurred, (including attorneys' fees and expenses) arising out of or in connection with (1) any act or failure to act or alleged act or failure to act by an Indemnified Person arising out of, in connection with or in any way related to the Company, (2) the affairs of the Company or (3) any determination or action which the Indemnified Person makes, takes or omits to take in good faith reliance upon and in accordance with the opinion or advice of the Company's auditors, managers or legal counsel; provided, however, that the Company shall not indemnify any Indemnified Person for any loss, damage, liability, cost or expense (1) from the willful misconduct, bad faith or, gross negligence of such Indemnified Person or (2) as to which indemnification is barred under U.S. federal securities laws, New York law or other applicable laws.

The parties principally dispute whether the indemnification provision applies to interparty indemnification. The Management Agreement by its terms is governed by New York law. "New York law on construing indemnity agreements is essentially hostile to claims that the agreement covers attorney fees in a suit between the contracting parties." *In re Refco Sec. Litig.*, 890 F. Supp. 2d 332, 340 (S.D.N.Y. 2012) (footnote omitted). A court should not infer that parties intended for interparty indemnification of attorney's fees "unless the intention to do so is *unmistakably clear* from the language of the promise" or the contract otherwise "support[s] an inference" that the parties intended for interparty indemnification. *Hooper Assocs., Ltd. v. AGS Computers, Inc.*, 74 N.Y.2d 487, 491-92 (1989) (emphasis added) (citations omitted).

11

Neither of these indicia of intent to cover interparty indemnification is present in the Management Agreement.  Indeed, the text of the indemnification provision strongly suggests that the parties did not contemplate its application in a situation like this one.  Specifically, Section 8(b) begins with the proviso that Island One will "indemnify, defend and hold harmless" an indemnified party.  It would make little sense for Island One to agree to "defend and hold harmless" a party against whom Island One itself was bringing a lawsuit.  The more natural reading of this language is that the parties intended for the indemnification clause to be limited to third-party actions.  *Cf. Bridgestone/Firestone, Inc. v. Recovery Credit Servs., Inc.*, 98 F.3d 13, 21 (2d Cir. 1996) (indemnification clause stating that the party "shall indemnify and save [the plaintiff] harmless from any and all claims, demands or causes of action, any and all costs or expenses, including attorney fees" is "easily . . . read as limited to third party actions"). Accordingly, even construing the facts in favor of Plaintiffs, they are not entitled to indemnification for this dispute under the Management Agreement, and summary judgment is granted in favor of Island One.

### C.    Indemnification and Advancement of Expenses under the Articles of Incorporation

The parties cross-move for summary judgment on Sozio's claim for indemnification and advancement of fees under the Island One Articles of Incorporation.  Because indemnification under the Articles of Incorporation is premature, and because the conditions for advancement of expenses have not been satisfied, summary judgment is denied.

The indemnification provision provides, in pertinent part:

> The Corporation shall, to the fullest extent permitted or required by Section 607.0850 of the Florida Statutes, indemnify any and all persons to whom it shall have power to indemnify under said section from and against any and all of the expenses, liabilities, or other matters referred to in or covered by said section, both as to action in his or her official capacity and as to action in another capacity while holding such office, and shall continue as to a

> person who has ceased to be a director, officer, employee or agent of the Corporation . . . .

Section 607.0850 of the Florida Statutes, in turn, governs the scope of a corporation's obligations to indemnify its directors, officers or employees.

Plaintiffs maintain that Section 607.0850(9) empowers the Court to order indemnification and advancement of expenses incurred in defending against the counterclaims. As relevant here, Section 607.0850(9) authorizes a court to order indemnification or advancement of expenses if it determines, *inter alia*, that "(a) [t]he director . . . is entitled to mandatory indemnification under subsection (3)"; or "(b) [t]he director . . . is entitled to indemnification or advancement of expenses, or both, by virtue of the exercise by the corporation of its power pursuant to subsection (7)."

Neither provision is applicable at this stage of the proceedings as regards indemnification. First, no liability yet exists to be indemnified. Second, Section 607.0850(9)(a) refers to subsection (3), providing for mandatory indemnification, which applies only to completed proceedings, requiring indemnification where a director has been "successful on the merits or otherwise in defense" of any referenced proceeding. *See Alt. Dev., Inc. v. St. Lucie Club and Apartment Homes Condo. Ass'n, Inc.*, 608 So. 2d 822, 828 (Fla. Dist. Ct. App. 1992) (observing that section 607.0850(3) applies only "to the extent that the party prevails"). Third, Section 607.0850(9)(b) is likewise inappropriate for summary judgment as to indemnification because there are disputed issues of fact as to whether the standard of conduct in 607.0850(7), to which Section 607.0850(9)(b) refers, has been satisfied. Specifically, Section 607.0850(7) provides for indemnification or advancement of certain expenses, unless "a judgment or other final adjudication establishes that [a director's] actions, or omissions to act, were material to the cause of action so adjudicated and constitute," *inter alia*, "[a] transaction from which the director

. . . derived an improper personal benefit," or "[w]illful misconduct or conscious disregard for the best interests of the corporation in a proceeding by or in the right of the corporation to procure a judgment in its favor or in a proceeding by or in the right of a shareholder." Whether this section applies is subject to the same conflicting evidence discussed above regarding Sozio's alleged withholding of material information and misappropriation of corporate opportunities. *Supra* § III.A.

To the extent Sozio seeks an order for advancement of expenses under Section 607.0850(9)(b), such a claim is denied without prejudice to renewal, as Sozio must first provide "an undertaking . . . to repay such amount if he . . . is ultimately found not to be entitled to indemnification by the corporation pursuant to [Section 607.0850]." Fla. Stat. § 607.0850(6); *see also SEC v. Utsick*, No. 06 Civ. 20975, 2009 WL 1404726, at *9 (S.D. Fla. May 19, 2009) (ordering disgorgement of advanced fees where, *inter alia*, it did "not appear from the evidence before the Court that TEGFI or WEI could have properly advanced [the defendant's] legal expenses in either year because [the defendant] did not fulfill the statutory requirement for such an advance"). The record does not yet contain such an undertaking. For these reasons, summary judgment is denied on the claim for indemnification and denied without prejudice to renewal on the claim for advancement of expenses.

### D. Breach of the Management Agreement by Island One

Plaintiffs move for summary judgment on Island Two's claim against Island One for breach of the Management Agreement and on Island One's counterclaim against Island Two for breach of the Management Agreement. Summary judgment on both claims is denied because issues of material fact exist that are properly resolved by the jury.

The Management Agreement requires Island One to pay Island Two an annual fee of $125,000 for the Advisor's services, which include "management, oversight and consulting

services to [Island One] as the Board of Directors may deem necessary or appropriate from time to time." The termination provision states that the Management Agreement is valid for an initial term of five years, automatically renewable for additional one-year periods. Any party may terminate the agreement "by giving notice in writing in the event of a material breach of th[e] Agreement and such breach has not been cured within thirty (30) calendar days of receipt of written notice thereof from the non-breaching party or parties . . . ."

Plaintiffs contend that Island One breached the Management Agreement in both terminating it without cause and in failing to comply with the notice-and-cure provision. Island One argues that it was entitled to terminate the contract due to Island Two's breach of the implied covenant of good faith and fair dealing, and that compliance with the notice-and-cure provision would have been futile. The threshold question is whether Island Two breached the covenant of good faith and fair dealing in the first place, thereby triggering the notice-and-cure provision.

New York law implies a covenant of good faith and fair dealing in all contracts. *Sec. Plans, Inc. v. CUNA Mut. Ins. Soc'y*, 769 F.3d 807, 817 (2d Cir. 2014) (citing *511 W. 232nd Owners Corp. v. Jennifer Realty Co.*, 773 N.E.2d 496, 500 (N.Y. 2002)). The covenant requires that "neither party shall do anything which will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract." *Id.* (quoting *Moran v. Erk*, 901 N.E.2d 187, 190 (N.Y. 2008)) (internal quotation marks omitted). "A breach of the covenant is considered a breach of the underlying contract." *Id.* (citation omitted). The covenant is breached in a "narrow range of cases," and requires "something more than that the defendant was misguided or ignorant or even merely negligent"; rather, a party must show "something more, such as that the defendant act[ed] arbitrarily or irrationally in exercising [the] discretion afforded to it under the contract." *Id.* at 817-18 (citations and internal quotation marks omitted)

15

(alterations in original).  "[W]hether particular conduct violates or is consistent with the duty of good faith and fair dealing necessarily depends upon the facts . . . and is ordinarily a question of fact to be determined by the jury . . . ."  *Tractebel Energy Mktg., Inc. v. AEP Power Mktg., Inc.*, 487 F.3d 89, 98 (2d Cir. 2007).

Here, there is a disputed question of material fact as to whether Island Two breached the covenant of good faith and fair dealing.  Island One contends that Island Two (through Sozio) breached the covenant by failing to disclose material information, including buyers' side financing, the value of Crescent and the Textron opportunity, but the parties present conflicting evidence as to whether Island Two (and Sozio as its principal) acted "arbitrarily or irrationally" in respect of the information Island Two failed to disclose to Island One.  For example, Sozio explains in his affidavit that he did not disclose the Crescent valuation because it valued the property as a hotel or condominium and not a timeshare resort, and accordingly was inaccurate, while Teitelbaum states in his affidavit that the Board would have wanted to see the Crescent valuation regardless of any deficiencies in the valuation.  Similarly, in respect of the Textron opportunity, Plaintiffs submit Sozio's testimony that Island One was aware of the opportunity and declined to pursue it, while Island One presents Teitelbaum's testimony that the Island One Board was not aware of the Textron receivables opportunity in 2012.  This is precisely the type of factual determination that falls within the province of the jury.

Plaintiffs argue, unpersuasively, that the Management Agreement was an arms-length contract that imposed no duty on Island Two (and Sozio as its principal) to disclose information relating to the Crescent valuation, the Textron receivables opportunity and the like, because the Management Agreement expressly disclaimed fiduciary duties amongst the parties.  A primary purpose of the Management Agreement, however, was for Island Two to provide general advisory services to Island One, and if Sozio, as principal of Island Two, was indeed concealing

material information from the Island One Board, that would plainly run afoul of the core purpose of the Management Agreement. Accordingly, summary judgment is denied on this ground. At trial, the parties will have the opportunity to present evidence as to the curability of Island Two's breach, if any, and whether Island One's failure to comply with the notice-and-cure provision was excusable.

For substantially the same reasons, Island One's counterclaim for breach of the Management Agreement is likewise denied.

## IV.   CONCLUSION

For the foregoing reasons, Island One's motion for summary judgment is GRANTED IN PART AND DENIED IN PART and Plaintiffs' cross-motion for summary judgment is DENIED. The Clerk of Court is directed to close the motions at Docket Nos. 96 and 110.

SO ORDERED.

Dated:  March 9, 2015
         New York, New York

                                              LORNA G. SCHOFIELD
                                    UNITED STATES DISTRICT JUDGE